Barry I. Levy (BL 2190)
Beth Shapiro
Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP
225 Broadway
New York, New York 10007
(212) 267-9020

*Attorneys for Plaintiff, Elayne Boosler*

**05 CV 4786**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

**JUDGE DANIELS**

ELAYNE BOOSLER,

                        Plaintiff,                      Docket No.:

      -against-

AFTRA HEALTH AND RETIREMENT FUND
and BOARD OF TRUSTEES OF AFTRA HEALTH
AND RETIREMENT FUND,

                        Defendants,

------------------------------------X

## COMPLAINT

Plaintiff, Elayne Boosler, by and through her counsel, Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP, complaining of the Defendants, AFTRA Health and Retirement Fund and the Board of Trustees of AFTRA Health and Retirement Fund, hereby alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an action for violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq., more particularly 29 U.S.C. §§1104 and

1132. Plaintiff seeks equitable and legal relief arising from the Defendants' wrongful denial of group medical benefits to her under the terms of the AFTRA Health and Welfare Plan, in which Plaintiff was a participant.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court over this action is based on 28 U.S.C. § 1331, and 29 U.S.C. §1132(e)(1).

3. Venue is properly laid in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. Section 1391 and 29 U.S.C. Section 1132(e)(1) because the Fund is administered within this District, and is the place where all or some of the acts which are alleged in the complaint occurred.

## THE PARTIES

4. Plaintiff, Elayne Boosler ("Plaintiff" or "Ms. Boosler") is a citizen of the State of California, residing at 11061 Wrightwood Lane, Studio City, California 91604. At all times relevant to this action, Plaintiff was a member of the American Federation of Television and Recording Artists and a participant in the AFTRA Health and Retirement Fund.

5. Defendant, AFTRA Health and Retirement Fund administers a Health and Welfare Plan, which is an "employee welfare benefit plan" or "welfare plan" within the meaning of §1002 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§1001 et seq., and is engaged in the business of providing hospitalization, group medical, pharmaceutical and other forms of welfare benefits to its participants. Defendant, Board of Trustees of the AFTRA Health and Retirement Fund (the "Trustees") are responsible for the administration and management of the Fund and its respective plans pursuant to the requirements of ERISA. The terms and conditions of the benefits which are afforded to participants under the Plan is set forth in a summary plan description booklet. ("The Plan")

6. Pursuant to the terms of the Plan, the Fund and the Trustees maintain their office at 261 Madison Avenue, New York, New York 10016, where the administration of the Plan is conducted by the Trustees and/or their designees.

## RELEVANT FACTS UNDERLYING ALL CLAIMS

7. Plaintiff is a world-class performer who, for many years, has been widely regarded throughout the world as one of the foremost female comedians in the entertainment industry. For approximately 25 years, Plaintiff has been a member of the American Federation of Radio and Television Artists ("AFTRA"). By virtue of her membership in AFTRA and the attainment of specific work opportunities, Plaintiff is entitled to group health insurance under the terms of the Plan.

I. THE ACCIDENT

8. In June of 2002, Plaintiff was involved in an accident that resulted in her sustaining an injury to her nose that included significant post-traumatic bleeding. At the

3

time of the accident, Plaintiff was in Colorado preparing to do a benefit concert to support a national food drive. Plaintiff actually did the concert despite the existence of the injury because it was a benefit, and she was not in a position to cancel or postpone her performance.

## II. THE REQUIREMENT THAT THE PLAN PAY FOR MEDICALLY NECESSARY SERVICES

9. The Plan is required to provide reimbursement for medical/surgical procedures when they are medically necessary.

10. According to the terms of the Plan, a service is medically necessary when it is (a) essential to the treatment of the injury or illness for which it is prescribed or performed, (b) is based on valid medical need according to accepted standards of medical practice and meets generally accepted standards of medical practice, and (c) is ordered by a physician.

11. According to the Defendants' own internal documents and communications, the Plan has been historically interpreted to cover medical and/or surgical expenses associated with plastic surgery provided that there had been an underlying injury.

## III. PLAINTIFF SEEKS CARE AND TREATMENT IN CALIFORNIA AND PRE-CERTIFICATION FOR SURGERY

### A. The Consultation and Conclusions of Dr. Kamer

12. After returning to California, Plaintiff consulted a well-known respected plastic surgeon by the name of Dr. Frank M Kamer, who concluded that she had suffered

a traumatically related injury to her nose and nasal cavity (i.e. a nasal fracture) as a result of the accident that had occurred in Colorado. Dr. Kamer's medical opinion was that Plaintiff required surgery to repair the damage.

13. The report from Dr. Kamer's initial examination stated, in pertinent part, that "internal nasal examination shows deflection of nasal septum to the right and a tender area at the rhinion just to the right with a right sublaxation". Based upon his examination and diagnosis, Dr. Kamer recommended an "open reduction of the nasal fracture and septoplasty"

14. Dr. Kamer's report was submitted to the Fund in an attempt to seek pre-certification for the surgery that the treating physician was recommending.

### B. The Independent Consultation of Dr. Churukian

15. In response to their receipt of Dr. Kamer's report, the Defendants requested that Plaintiff seek out and secure a second and independent surgical opinion. In response, Plaintiff sought out and secured an independent surgical examination, which was conducted by Dr. Michael Churukian. Dr. Churukian is a well-respected plastic surgeon in Los Angeles, and had no vested interest in the outcome of his examination and conclusions.

16. Dr. Churukian specifically confirmed the need for the surgery, and the causal relationship between the nasal injury and the facial trauma.

### C. The Events Following The Independent Medical Examination by Dr. Churukian

15. In late July of 2002, Ms. Boosler made a scheduled trip to Europe, of which she had earlier advised the Fund. By the time that she left for Europe, Plaintiff had already (a) been examined by an independent surgeon, who as described above, concluded that the surgery was medically indicated, and (b) had received a verbal confirmation from the Defendants that pre-certification for the surgery had been granted by the Fund office.

16. The verbal pre-certification given by the Fund was communicated to both Plaintiff and to Dr. Kamer. Based upon the pre-certification, the surgery was scheduled with Dr. Kamer for August 22, 2002. Ms. Boosler advised the Defendants of the surgery date and the fact that she would be in Europe until one day prior to the surgery. In addition, Ms. Boosler made a specific inquiry about whether any additional information was required prior to leaving for Europe, and was advised that there was none.

17. While Plaintiff was in Europe, the Fund sent her a letter advising that it was requesting a second surgical opinion.

18. The request for a second surgical opinion was based exclusively upon the recommendation of Dr. Stanley Jakubovics, M.D. ("Dr. Jakubovics"), a physician consultant that is employed by the Defendants.

19. At the time of the recommendation, Dr. Jakubovuics (a) was not aware of the July 10, 2002 report of Dr. Churukian, which clearly confirmed the existence of a nasal fracture, and (b) had not secured nor reviewed other relevant medical records

6

(including reports of Dr. Crystal and Dr. Middler) that confirmed the existence of a closed nasal fracture.

20. Both Dr. Kamer (the treating surgeon) and Dr. Churukian (the independent surgeon) are each Fellows of the American College of Surgeons. In contrast, Dr. Jakubovics was merely an internist who was neither a general nor plastic surgeon, and was not board certified in any specialty. Furthermore, Dr. Jakubovics did not then maintain an office to practice medicine, nor maintain any privileges at any hospital or medical facility.

21. Dr. Jakubovics was not properly credentialed to substitute his opinions for the opinions of the 2 physicians who (a) conducted the actual examinations of the patient, (b) concluded that there was a nasal injury related to the initial traumatic incident, and (c) recommended the surgical procedure.

22. The Defendants never contacted either Plaintiff or Dr. Kamer prior to the scheduled surgical date to advise that the Defendants were withdrawing the pre-certification. In fact, Plaintiff was not aware of the request for a second surgical opinion until after the surgery had already been performed.

23. In reliance upon the initial pre-certification, Plaintiff underwent the surgical procedure and Dr. Kamer performed the procedure on the scheduled date.

IV. **THE ARBITRARY AND CAPRICIOUS CLAIM PROCESS**

24. After discovering that the Defendants had withdrawn the pre-certification, Plaintiff submitted all relevant documents to the Fund in an attempt to convince the Fund

7

that its determination was wrong. In fact, on three (3) separate occasions, Ms. Boosler submitted the identical claim package to the Defendants because they asserted that the documentation had allegedly been lost or had not been received. Almost one year later, in June of 2003, the Defendants sent to the Plaintiff a letter advising that it would not cover the claim because the pre-certification had been withdrawn pending the second surgical opinion.

25. Subsequent to being notified of the claim determination, Plaintiff filed an administrative appeal with the Defendants seeking to have the initial determination reversed. In response to the appeal, the Defendants advised that (a) there was no right to appeal from the initial determination, and (b) that she should re-submit the claim for consideration.

26. On May 28, 2004, the claim and supporting documents were re-submitted to the Fund on behalf of Plaintiff. The letter to the Fund that accompanied the claim re-submission stated, in pertinent part as follows:

> Enclosed please find a duplicate claim that is being submitted to the Fund on behalf of our client, Elayne Boosler. This claim and the supporting bills have previously been provided to the Fund on several occasions, but apparently, had been treated as a pre-surgical request for certification rather than a post-surgical claim for reimbursement. As our client has already made payment to the physician, please arrange to have reimbursement sent directly to her attention.

27. The Defendants did not respond to the May 28, 2004 letter nor the claim re-submission that was made on behalf of Plaintiff. As such, on November 5, 2004, a follow

8

up letter was sent to the Defendants on behalf of Plaintiff that stated, in relevant part, as follows:

> On May 28, 2004, a claim that was submitted to the Fund on behalf of our client, Elayne Boosler, seeking reimbursement for nasal surgery that had been performed. We requested that reimbursement be made directly to our client since she had already paid the physician. To date, there has been no payment issued nor any determination made regarding the claim. Please address this immediately, as the amounts that Ms. Boosler has already paid to the physician are substantial. Please note that pursuant to ERISA, your claim determinations are governed by specific time frames which, absent the need for additional verification, have not been met.

28. The Defendants never responded to the letter. To date, the Defendants have not made a claim determination nor issued payment to the Plaintiff who has, herself, already paid for the surgical services that were performed as well as the associated costs.

## FIRST CLAIM
### (To Obtain Benefits Pursuant to Section 1132 of ERISA)

29. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked and designated "1" through "28" with the same force and effect as if more fully set forth herein.

30. The decision of the Defendants to deny pre-certification for the medical-surgical benefits for the medical services that were performed upon the Plaintiff in relation to the accident and the resulting nasal injury was arbitrary and capricious, rendering the decision null and void.

31. The Defendants' refusal for almost one year to make a determination upon the Plaintiff's re-submission of the claim for the medical-surgical benefits for the medical

services that were performed upon the Plaintiff in relation to the accident and the resulting nasal injury represents arbitrary and capricious conduct requiring the Defendants to pay the Plaintiff's claim.

32. At all relevant times, the Plan was an "employee benefit pension plan" or "pension plan" within the meaning of §1002 of ERISA

33. The Defendants' arbitrary and capricious refusal to afford Plaintiff medical-surgical benefits under the terms of the Plan violates the Plaintiff's rights under ERISA, particularly 29 U.S.C. §1132(a)(1)(B), and Plaintiff is entitled to a determination of her rights under the terms of the Plan.

34. As a result of the Defendants' arbitrary and capricious conduct, Plaintiff has been damaged and has been deprived of the medical-surgical benefits under the Plan which she is rightfully entitled, and reimbursement of the amounts that she has been forced to expend out of her own funds.

## SECOND CLAIM
### (Breach of Fiduciary Duty in Violation of Section 1104)

35. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked and designated "1" through "34" with the same force and effect as if more fully set forth herein.

36. The Defendants failed to discharge their duties with respect to the Plan solely in the interest of its participants and beneficiaries, including Plaintiff, as there was no basis upon which the denial of benefits is justified

37. At all relevant times, the Plan was an "employee benefit pension plan" or "pension plan" within the meaning of §1002 of ERISA

38. The Defendants' failure to discharge its duties with respect to the Plan for the exclusive purpose of providing benefits to participants and beneficiaries, including the Plaintiff violates the Plaintiff's rights under ERISA, particularly 29 U.S.C. §1104 and § 1132(a)(3), and plaintiff is entitled to a determination of her rights under the terms of the Plan.

39. As a result of the Defendants' failure to discharge its duties with respect to the Plan for the exclusive purpose of providing benefits to participants and beneficiaries, including the Plaintiff, Plaintiff has been damaged and has been deprived of the medical-surgical benefits under the Plan which she is rightfully entitled, and reimbursement of the amounts that she has been forced to expend out of her own funds.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, as follows:

(1) An order declaring that Plaintiff is entitled to coverage for the medical-surgical benefits associated with the medical procedures performed as a result of the accident of June 2002 and payment of the amounts to the Plaintiff that are due and owing;

(2) The reasonable attorneys' fees and the costs of the prosecution of this action pursuant to 29 U.S.C. §1132(g); and

   (3) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
    May 17, 2005

            SHAPIRO, BEILLY, ROSENBERG
            ARONOWITZ, LEVY & FOX, LLP

            By:_____
              Barry I. Levy (BL 2190)
              A Member of the Firm
            225 Broadway
            New York, New York  10007
            (212) 267-9020

            *Counsel for Plaintiff, Elayne Boosler*

Index No.                    Year 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELAYNE BOOSLER,

                                                    Plaintiff,

                          -against-

AFTRA HEALTH AND RETIREMENT FUND and BOARD OF TRUSTEES OF AFTRA HEALTH AND RETIREMENT FUND,

                                                    ~~Defendants.~~

**SUMMONS IN A CIVIL CASE and COMPLAINT**

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**
*Attorneys for*        Plaintiff

225 BROADWAY
NEW YORK, N. Y. 10007-3088
(212) 267-9020
FAX (212) 608-2072

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

Dated: ..............................        Signature ..............................

                                             Print Signer's Name ..............................

*Service of a copy of the within*                                    *is hereby admitted.*

Dated:

                                             ..............................
                                             *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ **NOTICE OF ENTRY**
that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on                    20

☐ **NOTICE OF SETTLEMENT**
that an Order of which the within is a true copy will be presented for settlement to the Hon.                                    one of the judges of the within named Court,
at
on                    20     , at           M.

Dated:

                    **SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**
                    *Attorneys for*

                    225 BROADWAY
To:                 NEW YORK, N. Y. 10007-3088